UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CARVAUGHN JOHNSON, | ) | CASE NO. 3:21-cv-01514 (KAD) |
| *Plaintiff*, | ) | |
| v. | ) | |
| | ) | |
| KRISTINE BARONE, et al., | ) | JUNE 12, 2023 |
| *Defendants*. | ) | |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION TO DISMISS [Doc. No. 29]**

Kari A. Dooley, United States District Judge

Plaintiff, Carvaughn Johnson ("Johnson"), filed this civil rights action pursuant to 42 U.S.C. § 1983 to assert federal claims relating to a June 28, 2021 incident involving receipt of his legal mail and the events that followed. On initial review, the Court dismissed the First Amendment retaliation claim against Officer Drozdowska (hereinafter "Defendant") without prejudice and all other claims with prejudice. *See* Initial Review Order, Doc. No. 12. Johnson filed an Amended Complaint reasserting his retaliation claim against Defendant, and the Court permitted the claim to proceed. *See* Initial Review Order, Doc. No. 16. Defendant has filed a motion to dismiss the case for failure to exhaust administrative remedies before commencing this action. For the following reasons, Defendant's motion is GRANTED.

**Standard of Review**

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* Detailed factual allegations are not required, *Keller v. Harlequin Enterprises Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014), but mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. Plaintiff must, at a minimum, "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To determine whether a plaintiff has met this standard, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in the light most favorable to the nonmoving party. *See In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

With respect to *pro se* litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). The court may not "invent factual allegations" that the plaintiff has not pleaded. *Id.*

When reviewing a motion to dismiss, the court considers the complaint, documents attached to the complaint, documents incorporated by reference therein, documents relied on in bringing the action which were in the plaintiff's possession or of which the plaintiff had knowledge, as well as matters of which judicial notice may be taken. *See Chambers v. Time*

*Warner, Inc.*, 282 F.3d147, 152–53 (2d Cir. 2002). The court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).

**Allegations**

On June 28, 2021, Johnson returned to his housing unit from his prison job. *See* Am. Compl., Doc. No. 15, ¶ 31. He stopped at the officer's station to inquire if he had received any mail. *See id.* As Officer Acosta started to hand Johnson his legal mail, Defendant snatched the envelope, opened it, and began reading the contents. *See id.* ¶ 32. When Johnson asked her to return the mail, Defendant commented, "you like to file lawsuits, who are you suing now, is it still Deputy Warden Ogando?" *Id.* Defendant followed Johnson to his cell, verbally harassing him and saying, "I can do what I want with the Mail." *Id.* ¶ 33. After Defendant returned to the officer's station, Officer Acosta gave Johnson his legal mail. *See id.* ¶ 34.

Johnson submitted requests to several officers but did not receive any responses. *Id.* ¶¶ 35–39. On July 28, 2021, Johnson submitted a Level 1 administrative remedy, which was denied on on September 24, 2021. *See id.* ¶¶ 40–41. Johnson prepared a Level 2 administrative remedy that same day. *See id.* ¶ 42. The Administrative Remedy Coordinator signed the receipt on September 30, 2021. *See id.* Johnson alleges that, as of the date of the Complaint, November 9, 2021, he had not received a response to his Level 2 administrative remedy. *See id.*

**Discussion**

Defendant argues that Johnson failed to properly exhaust his administrative remedies before commencing this action. The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies before a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought

3

with respect to prison conditions under section 1983…or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires proper exhaustion—the inmate must complete all steps required by the administrative review process applicable to the institution in which he is confined and do so properly. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96; *see also Jones*, 549 U.S. at 211.

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by…making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (affirming grant of summary judgment for failure to exhaust administrative remedies and stating that informal letters sent to prison officials "do not conform to the proper administrative remedy procedures"); *Timmons v. Schriro*, No. 14-CV-6606 RJS, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("The law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA.").

The Supreme Court has held that the requirement for proper exhaustion is not met when a

4

grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *See Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *See Baez v. Kahanowicz,* 278 F. App'x 27, 29 (2d Cir. 2008). Completing the exhaustion process after the complaint is filed does not satisfy the exhaustion requirement. *See Neal v. Goord*, 267 F.3d 116, 122-23 (2d Cir. 2001); *see also Girard v. Chuttey*, 826 F. App'x 41, 44–45 (2d Cir. 2020) (inmate failed to exhaust administrative remedies because he commenced action in district court before appeal was decided or response period elapsed).

Special circumstances will not relieve an inmate of his obligation to comply with the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (quotation marks and internal citations omitted).

The *Ross* Court identified three circumstances in which a court may find that internal administrative remedies are not available to prisoners under the PLRA. *See id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643. "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643. The

5

Second Circuit has noted that "the three circumstances discussed in *Ross* do not appear to be exhaustive[.]" *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016). In considering the issue of availability, however, the court is guided by these illustrations. *See Mena v. City of New York*, No. 13-CV-2430 (RJS), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

"Failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams,* 829 F.3d at (*citing Jones,* 549 U.S. at 216). "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Id*.

The general inmate grievance procedure is set forth in Administrative Directive 9.6.[1] An inmate must first attempt to resolve the matter informally. He may attempt to verbally resolve the issue with an appropriate staff member or supervisor. *See* Dir. 9.6(6)(a)(i). If attempts to resolve the matter verbally are not effective, the inmate must make a written attempt using a specified form and send the form to the appropriate staff member or supervisor. *See* Dir. 9.6(6)(a)(i)(2)(a). If an inmate does not receive a response to the written request within fifteen business days, or the inmate is not satisfied with the response to his request, he may file a Level 1 grievance on form CN 9602. *See* Dir. 9.6(6)(a)(ii).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. *See* Dir. 9.6(6)(a)(ii). The Unit Administrator shall respond in writing to the Level 1 grievance

---

[1] *See* www.portal.ct.gov/DOC/AD/AD-Chapter-9.

within thirty business days of his or her receipt of the grievance. *See* Dir. 9.6(6)(b)(i)(3). The Unit Administrator may extend the response time upon notice to the inmate on the prescribed form. *See* Dir. 9.6(6)(b)(i)(4)(a)(i) & Dir. 9.6(5)(j).

The inmate must appeal the disposition of the Level 1 grievance by the Unit Administrator, or the Unit Administrator's failure to dispose of the grievance in a timely manner, to Level 2. The Level 2 appeal of a disposition of a Level 1 grievance must be filed on form CN 9604 within five calendar days from the inmate's receipt of the decision on the Level 1 grievance. The Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate and is decided by the District Administrator. *See* Dir. 9.6(6)(b)(ii)(1) & (2). The response to the Level 2 appeal "shall be issued to the inmate, in writing within 30 business days of receipt of the CN 9604." Dir. 9.6(6)(b)(ii)(4).

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure, or Level 2 appeals to which there has been an untimely response by the District Administrator. *See* Dir. 9.6(6)(b)(iii)(1). Any Level 3 grievance appeal filed as a result of the inmate not receiving a timely response to his Level 2 grievance appeal must be filed within sixty-five calendar days of filing form CN 9604. *See* Dir. 9.6(6)(b)(iii)(2)(a).

Johnson commenced this action by filing a Complaint on November 12, 2021. *See* Doc. No 1. Thus, he must have properly completed the exhaustion process by that date. *See Baez*, 278 F. App'x at 29 (exhaustion must be completed before the inmate files suit). Johnson alleges that he received a receipt for his Level 2 appeal dated September 30, 2021. Using this date as the "date of receipt," Johnson should have received a response within thirty business days of September 30,

7

2021—November 15, 2021. As Johnson filed this action before this response period expired, he did not properly exhaust his administrative remedies before commencing this action. *See Girard*, 826 F. App'x at 44–45; *Neal,* 267 F.3d at 122–23. Thus, Defendant's motion to dismiss is granted.

In opposition to the motion to dismiss, Johnson submits a copy of the response he received to his Level 2 grievance. He argues that he filed this action between 72–96 hours before he received the response and argues that the Court should excuse his early filing. As Johnson did not rely on this document in drafting his Complaint—it did not yet exist—the Court cannot consider it in ruling on the motion to dismiss. However, even if the Court considers the grievance response, it does not alter the outcome. The response reveals that Johnson's Level 2 appeal was received on October 6, 2021, not September 30, 2021, as Johnson appears to have assumed. Thus, the response was due thirty business days later, or by November 19, 2021. Consistent with this deadline, the response is dated November 18, 2021. Johnson filed his Complaint on November 12, 2021, six days before the response was issued and seven days before the response period expired. As exhaustion of administrative remedies following the filing of a complaint is not proper exhaustion, Johnson's Complaint is still subject to dismissal.

**Conclusion**

Defendant's Motion to Dismiss [Doc. No. 29] is GRANTED. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** at Bridgeport, Connecticut this 12th day of June 2023.

*Kari A. Dooley*_____
Kari A. Dooley
United States District Judge